UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TONY LANIER MANTLO,
     Plaintiff,

vs.                              Case No.: 1:20cv173/AW/EMT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]
      Defendant.
_____/

### **REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. The case is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34. Upon review of the record before the court, the undersigned finds that the findings of fact and determinations of the Commissioner are supported by substantial

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Andrew M. Saul as the Defendant in the case.

evidence and application of proper legal standards and that the Commissioner's decision, therefore, should be affirmed.

## ISSUE ON REVIEW

Plaintiff raises a single issue on appeal, arguing "substantial evidence does not support the Administrative Law Judge's finding that Plaintiff Mantlo, as of the date last insured, had the residual functional capacity for sedentary work" (ECF No. 16 at 11).[2]

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 10, 2018, alleging disability beginning January 1, 2012 (tr. 76, 207–08).[3]  The application was denied initially and on reconsideration (tr. 75–105, 111–24).  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (tr. 141, 143–44).  The request was granted, and an ALJ conducted a hearing on October 31, 2019 (tr. 30–49), at which Plaintiff

---

[2] Given the ALJ's findings, which are set forth below, and the arguments Plaintiff makes in support of the lone issue he raises on appeal, the undersigned assumes the above-quoted reference to "sedentary" work was in error and that Plaintiff intended to refer to light work (as Plaintiff did throughout other portions of the memorandum).

[3] All references to "tr." refer to the transcript of the Social Security Administration record filed on April 27, 2021 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page number that may appear.

amended the alleged onset date to March 25, 2015 (tr. 33, 333). By decision dated November 13, 2019, the ALJ found Plaintiff not disabled under the Act during the relevant period (tr. 12–23). Plaintiff petitioned the Appeals Council for review of the ALJ's decision; the Appeals Council denied the request (tr. 1–3, 203). The ALJ's decision thus became the final determination of the Commissioner, and it is ripe for review in this court.

## FINDINGS OF THE ALJ

In his written decision dated November 13, 2019 (tr. 15–23), the ALJ made a number of findings relative to the issue raised in this appeal, including the following:

- Claimant last met the insured status requirements of the Act on June 30, 2016 (tr. 17).

- Claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 25, 2015, through his date last insured of June 30, 2016 (*id.*).

- Through the date last insured, Claimant had the following severe impairments: diverticulosis and peptic ulcer disease (*id.*).

- Through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) (tr. 18).

- Through the date last insured, Claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could only occasionally climb ramps and

stairs, stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; could not have concentrated exposure to respiratory irritants, such as dust, fumes, and gases, wetness, humidity, or vibrations; and could not work around moving, mechanical parts or at unprotected heights (*id.*).

- Through the date last insured, Claimant was unable to perform any past relevant work (tr. 21).

- Claimant has at least a high school education and is able to communicate in English (tr. 22).

- Through the date last insured, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform (*id.*).

- Claimant was not under a disability, as defined in the Act, at any time from March 25, 2015, the alleged onset date, through June 30, 2016, the date last insured (tr. 23).

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence in the record. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., Office of Workers' Comp. Program, U.S. Dep't of Labor*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court also may not look "only to those parts of the record which support the ALJ" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."

*Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[4]

## FACT BACKGROUND[5]

Plaintiff was fifty-one years old on June 30, 2016, the date last insured (tr. 207, 230, 258). He completed high school and had past relevant work as a laborer/construction worker (tr. 19, 33, 40, 245, 263). Plaintiff alleges he became disabled due to "several stomach surgeries," use of a colostomy bag, a stroke, and high blood pressure (tr. 76, 262).

Plaintiff testified at the hearing before the ALJ, represented by counsel (tr. 32). The relevant portions of Plaintiff's testimony, upon which Plaintiff exclusively relies in support of this appeal, are set forth *infra*.

---

[4] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

[5] The recitation of facts set forth below is derived from testimony at the hearing before the ALJ and the administrative record and is limited to facts bearing on the issue Plaintiff raises on appeal.

A vocational expert, Mark A. Capps, also testified at the hearing before the ALJ (tr. 43). Mr. Capps testified that Plaintiff performed his past work as a construction worker at the heavy exertional level (tr. 44). The ALJ posed several hypothetical questions to Mr. Capps. As the first hypothetical, the ALJ asked Mr. Capps to consider an individual of Claimant's age and educational level with the same past work, who also had the same RFC as Plaintiff (as set forth *supra*) (tr. 44). The ALJ asked Mr. Capps if such an individual would be able to perform Plaintiff's past work (*id.*). Mr. Capps responded in the negative (*id.*). The ALJ then asked Mr. Capps if there would be other positions such an individual could perform (*id.*). Mr. Capps responded "Yes, sir," and identified title assembler of small products, which is light, unskilled work; labeler, which also is light, unskilled work; and inspector/hand packer, which likewise is light and unskilled (tr. 44–45).

As the second hypothetical question, the ALJ asked Mr. Capps to "take the individual from the first [hypothetical] and add that they would also be expected to be off task, during the workday, for at least 20 percent of the workday . . . at unpredictable intervals and, therefore, outside the normally permitted breaks . . . ." (tr. 45). The ALJ asked Mr. Capps the effect such additional limitations would have on job availability (*id.*). Mr. Capps responded "Judge, I think, when a worker is not doing their job; off task in addition to their normal breaks ten percent of a workday,

but on a day-in/day-out basis, they will not meet the minimal expectations of competitive performance and work" (tr. 45). When asked the "tolerance of employers, for absenteeism," Mr. Capps testified that "when a worker is missing two days or more, a month, and the employer feels there's just no correction for it, termination is very likely" (*id.*).

## DISCUSSION

As set forth above, at step two of the sequential evaluation process, the ALJ found that through the date last insured, Plaintiff had severe impairments of diverticulosis and peptic ulcer disease (tr. 17).[6] At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (tr. 18). Because Plaintiff did not meet or equal a listing, the ALJ assessed Plaintiff's RFC, finding that through the date last insured, Plaintiff could perform a reduced range of light work (*id.*). The ALJ also found that given Plaintiff's RFC and vocational profile, jobs existed in significant numbers in the national economy through the date last insured that Plaintiff could perform,

---

[6] The ALJ noted Plaintiff had a stroke in 2018, after the date last insured, and also that Plaintiff had a history of treatment for diverticulosis and peptic ulcer disease, as well as pulmonary emboli, prior to the alleged onset date (tr. 17, 20, 361–64).

including small products assembler, labeler, and inspector/packer (tr. 22–23). Accordingly, the ALJ concluded Plaintiff was not under a disability, as defined in the Act, at any time from March 25, 2015, the amended alleged onset date, through June 30, 2016, the date last insured (tr. 23).

On appeal, Plaintiff argues substantial evidence does not support the ALJ's decision that, as of the date last insured, Plaintiff had the RFC to perform a reduced range of light work.  In support of his position in that regard, Plaintiff relies solely on the following testimony adduced at the October 31, 2019, hearing before the ALJ[7]:

> Q Okay now, Mr. Mantlo, we have a recent change.  We have that you're indicating you became unable to work, about March 25th of 2015.
>
> Q Does that date sound correct to you?
>
> A Yes, sir.
>
> Q Okay.  And have you worked, at all, since then?
>
> A No, sir.

---

[7] In the Scheduling Order entered in this case, the undersigned advised that each party was required to "file and serve a memorandum setting forth concisely the basis for affirming or reversing the final decision of the Commissioner and a detailed analysis of the administrative record, with citation of authorities in support of the party's position and to the administrative record" (ECF No. 13 at 1) (emphasis in original).  In the decretal portion of the order, the undersigned reiterated that "[t]he memorandum must set forth Plaintiff's legal contentions and include citations to the record by page number for factual contentions" (*id.* at 2) (emphasis in original).

Q Okay. . . . Okay, now—and let's see. In the past, I see you've done some laborer work?

A Yes, sir.

Q Okay. All right. Now turning to the medical concerns, and we'll talk about the diverticulosis. And tell me about the problems that you were noticing from that. As [your attorney,] Mr. Fernandes[,] probably told you, we're looking at the period through the end of June 2016. So if you could tell me about the ways that the diverticulosis was bothering you, back then?

A My stomach would swell up, and [INAUDIBLE]. My colon, I guess, would swell up. That's what—the doctor would tell me I had blockage. And then we would go through and try to—excuse me, Your Honor. And I'd have blockage, and my stomach would be hurting, and all that stuff, and I couldn't—and then we went—I've had several surgeries, and I don't remember what [the] dates, or anything like that, was [sic].

Q Okay. Now did it cause like pain or –

A Yes, sir.

Q Okay. On a scale of one to ten, where would you put the pain? Again, back there, before June of 2016?

A It would hurt. It would be a ten, you know, most of the time.

Q Okay. Were they giving you medications for the pain, or ways to control the pain?

A Well—excuse me—whenever I'd go to the hospital, I'd have to go in, and they'd give me pain medicine through my IV and stuff, and immediately, one time, had to do immediate surgery. I was hurting so bad, they done [sic] a [sic] exploratory thing, and that's—excuse me— that's what they done on [sic] my surgery. It was a [sic] ulcer, at one time. And then it all turned into diverticulitis. I'm sorry, I stutter.

Q It's okay.  Okay.  Now other than the pain, what other problems would [it] cause y[ou?]

A I couldn't use the restroom properly.  And when it hurt, it hurt.  I'd have to hug up to pillows and try to comfort myself, you know, by putting tension on my stomach area.

Q And now were you noticing any symptoms from the hepatitis?  The hepatitis C?

A No, sir, not yet.  I hope not.

Q Okay.  Could you describe a bit about what you might do in a typical day?  And again, this is back, before the end of June of 2016.  Just what a typical day might be like?

A Are you talking about after my diverticulitis, or just

Q Just like—like –

A – like a typical day at work?

Q – what you would do like, say, from when you got up in the morning till [sic] when you went to bed at night.  And this is, again, between March of 2015 and June of—the end of June of 2016.

A I would—it's been, sir—I would normally get up and, you know, do—if I had, do my medications and stuff and—that I was on, at that time—and I don't remember what.  But I guess I'd—I don't remember, to tell the truth.  I'd just hang out at the house and take care of my— change my bandages, and stuff like that there, I guess, that's what we're talking about.  I don't remember, sir.

Q Okay.  And how about –

A Excuse me.

Q – driving?  Were you able to do any driving?

A Some.  But most of the time, my mother would drive me to my appointments and stuff.

Q And could you help out with the household chores?

A Yes, sir, I tried to do what I could do, you know.  Try to sweep a little bit or, you know, just maintain; try to help out with what I could.

Q Okay.  Could you help out with making meals?

A Yes, sir.  Sometimes I'd do some cooking for my mother.

Q Okay.

A But she done [sic] a lot of it.

Q And did you need any help with getting cleaned up or getting dressed?

A Yeah, I needed some help changing my bandages, and stuff like that, right there.

Q Could you help out with the shopping?

A No, sir.  My mother went to town, and then she done [sic] all the shopping, so I wouldn't have to go to walk up and down the aisles with her.  I didn't feel up to it.

Q Okay.  And how well were you sleeping, back then?  How many hours of sleep might you typically get?

A After being, you know, in the state I was in, I wouldn't get that much rest.  Probably, four hours a night, or something like that, there.  Maybe, five.

Q And were you needing to take naps, during the daytime?

A Well, I would.  Yes, sir, I'd take little naps.

Q Okay.  And how many naps might you take, in a typical day, and how long would they last?

A I'd probably take one, about a [sic] hour/hour-and-a-half, maybe, twice a day.  If not a little more.

(ECF No. 16 at 14–18).

Based on such testimony, Plaintiff argues "[a]ny person who is incapable of going shopping and providing significant help with the household chores is, by definition, incapable of performing light work," which requires that a person "be capable of being on their feet per [sic] 6 hours out of an eight-hour workday" (*id.* at 18).[8]  Plaintiff's argument is unavailing.  Indeed, nothing in Plaintiff's testimony suggests—much less establishes—Plaintiff was "incapable" of going shopping or providing significant help with household chores during the relevant period.

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Social Security Ruling (SSR) 83-10, 1983 WL31251, at *6.

With regard to shopping, Plaintiff initially responded he could not help with shopping; Plaintiff then explained, however, that his mother, with whom he lived, did all the shopping when she went to town so he would not have to walk up and down the aisles because he did not "feel up to it" (tr. 36). At most, therefore, Plaintiff established he did not "feel up to" shopping during the relevant period. He did not establish—or even present evidence from which one could reasonably deduce—he was incapable of doing so.

With respect to assisting with household chores, when asked whether he was able to help in that regard, Plaintiff responded "Yes, sir, I tried to do what I could do, you know," explaining he tried "to sweep a little bit or, you know, just maintain; try to help out with what I could" (*id.*). Again, Plaintiff did not testify, or otherwise establish, he was incapable of significantly assisting with household chores, or even point to facts from which such a conclusion could plausibly be reached.

In addition, although the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ also found Plaintiff's statements concerning the intensity, persistence, and *limiting effects* of those symptoms not entirely consistent with the medical evidence and other evidence in the record (tr. 20). And Plaintiff has pointed to no evidence undermining the ALJ's finding in that regard or otherwise challenged the finding.

Case No.: 1:20cv173/AW/EMT

"[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). As the Supreme Court recognized, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, Plaintiff simply failed to present evidence establishing he was disabled during the relevant period.

As the ALJ observed, not only did Plaintiff's testimony establish he was able to engage in a "fair set of" activities of daily living during the relevant period, but the medical evidence during the same period showed minimal to no treatment for diverticulosis or peptic ulcer disease (tr. 21). "[T]he bulk of treatment contained in the medical evidence was during the period of time prior to [the] alleged onset date and following the [date last insured]" (*id.*). Although Plaintiff's condition apparently worsened and he ultimately was assigned a sedentary RFC, it was after the date last insured and likely due to a stroke Plaintiff suffered during that time (tr. 17–18).[9] A showing that an impairment became disabling after expiration of the

---

[9] Plaintiff apparently was found disabled for purposes of Supplemental Security Income in February 2018 based on residuals of a stroke suffered earlier that year. *See* ECF No. 17 at 7 n.4.

date last insured is not sufficient. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831(11th Cir. 2011); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

In arguing the ALJ erred in finding him capable of performing light work, Plaintiff at least implies the ALJ failed to fully and fairly develop the record, pointing to the ALJ's questioning of Plaintiff during the hearing.   The Social Security disability benefits process is inquisitorial rather than adversarial. *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).   It also is informal. *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b).   Due to this informality, ALJs, like European magistrates, have a duty to develop a complete record. *Kendrick*, 998 F.2d at 456.   In this Circuit, the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).   The duty to develop the record exists even if the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735).

To that end, the ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits," *Crawford & Co.* 235 F.3d at 1304.  That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence.  Rather, the ALJ must have sufficient evidence to decide the case.  Where the ALJ has sufficient information to decide the case, he or she can do so.  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to make a decision, no showing of prejudice is made).

Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Id.* (internal marks omitted).  In determining whether to remand for further development, "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or  clear prejudice." *Id.* (internal marks omitted).

In *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985), the appellant argued he was not granted a full and fair hearing and that the "abbreviated hearing was characterized by superficial questioning in which the ALJ failed to conscientiously inquire into and develop all salient facts regarding his medical problems and symptoms." The Eleventh Circuit agreed the hearing "was less than totally satisfactory," as the "[q]uestioning was somewhat brief and superficial, and the ALJ would have been recommended to inquire further into appellant's medical problems and physical capabilities." *Id.* The Eleventh Circuit nevertheless held that "a showing of prejudice must be made before [it] will find that a hearing violated claimant's rights of due process and requires a remand to the Secretary for reconsideration," explaining "[t]his at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*

The court concluded in *Kelley* that there had "been no showing of prejudice or unfairness resulting from appellant's lack of counsel or the abbreviated hearing" because "[t]he assertion that appellant might have benefited from a more extensive hearing is pure speculation" and "appellant ma[de] no allegations that the record considered by the ALJ as a whole was incomplete or inadequate." *Id.* Further, as

the court observed, "[t]he ALJ opinion was quite thorough, indicating that the entire record was considered," and "[t]here [was] no allegation that the presence of an attorney or a more thorough hearing would have brought forth any additional evidence beneficial to appellant. *Id.* at 1540–41. "In short, the record as a whole reveal[ed] that no relevant facts, documents, or other evidence was omitted from the ALJ's consideration or his findings." *Id.* at 1541 (internal marks omitted).

The same is true in this case. In his decision, the ALJ specifically stated "[the] claimant "submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing" and that the ALJ carefully considered the entire record (tr. 15, 17). Plaintiff—who, again, has been represented by counsel throughout this proceeding—has not pointed to a single fact, document, or other piece of evidence the ALJ failed to consider, much less articulated any manner in which consideration of such evidence could even arguably have changed the result. And the undersigned is aware of no such evidence. As such, Plaintiff has failed to show the ALJ failed to fully and fairly develop the record or that he was prejudiced as a result thereof. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding, in case involving claim of lack of representation, that in order for remand to be appropriate, there must be "evidentiary gaps which result in unfairness or 'clear

prejudice'" and that the claimant did not "indicate what facts could have been submitted by an attorney that would have changed the outcome" and thus did not show prejudice).

CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner's decision supported by substantial evidence in the record and application of proper legal standards.[10]   *See Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  The Commissioner's decision, therefore, should be affirmed.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the decision of the Commissioner be **AFFIRMED**.

2.    That judgment be entered accordingly and the clerk be directed to close the file.

At Pensacola, Florida, this 13th day of December 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[10] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005).

Case No.: 1:20cv173/AW/EMT

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**